# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

JASPER WASHINGTON, JR.,
    Plaintiff

v.

ALLIEDBARTON SECURITY SERVICES, LLC,
    Defendant

Civil Action No. 16-1283 (CKK)

**MEMORANDUM OPINION**
(February 5, 2018)

This case returns to the Court on remand from the United States Court of Appeals for the District of Columbia Circuit ("D.C. Circuit"), with instructions to consider whether Plaintiff's lawsuit can go forward under Section 301 of the Labor Management Relations Act ("LMRA"). The gravamen of Plaintiff's Complaint in this case is that he was treated unfairly when his employment as a security guard with the Defendant, AlliedBarton Security Services, LLC ("AlliedBarton"), was terminated. He also complains about various other issues both pre- and post-dating his termination. Plaintiff initially brought his case as one for breach of contract under District of Columbia law, which the Court dismissed because it was preempted by the Section 301 of the LMRA. The D.C. Circuit affirmed the Court's decision in-part, in that it agreed that Plaintiff's state law claims were preempted. However, the D.C. Circuit remanded the case for this Court to decide whether Plaintiff's pleadings could be viewed as stating a claim under Section 301.

Now before the Court is Defendant's [37] Second Motion to Dismiss. Defendant argues that Plaintiff fails to state a claim under Section 301 because any such claim would be untimely. The Court agrees. Plaintiff's allegations, although somewhat difficult to understand, are best characterized as asserting what is known as a "hybrid § 301/fair representation claim." A six

1

month statute of limitations applies to such a claim, and Plaintiff's Complaint was filed far outside of this statutory period. Accordingly, upon consideration of the pleadings[1], the relevant legal authorities, and the record for purposes of this motion, the Court GRANTS Defendant's Motion and once again DISMISSES this case.

## I. BACKGROUND

### A. Factual Allegations in Plaintiff's Pre-Remand Pleadings

The Court begins by recounting the allegations in Plaintiff's pleadings as they existed before the remand in this case. For the purposes of the currently-pending motion, the Court accepts as true the well-pleaded allegations in Plaintiff's Complaint. The Court does "not accept as true, however, the plaintiff's legal conclusions or inferences that are unsupported by the facts alleged." *Ralls Corp. v. Comm. on Foreign Inv. in U.S.*, 758 F.3d 296, 315 (D.C. Cir. 2014). Further, because Plaintiff proceeds in this matter *pro se*, the Court must consider not only the facts alleged in Plaintiff's Complaint, but also the facts alleged in the various other documents Plaintiff has filed thus far in this case. *See Brown v. Whole Foods Mkt. Grp., Inc.*, 789 F.3d 146, 152 (D.C. Cir. 2015) ("a district court errs in failing to consider a *pro se* litigant's complaint 'in light of' all filings, including filings responsive to a motion to dismiss") (quoting *Richardson v.*

---

[1] The Court's consideration has focused primarily on the following documents, although the Court has considered all of the pleadings in the case, including those that pre-date the remand:
- Pl.'s "The Order of the Court," ECF No. 36;
- Def.'s Mem. in Support of Second Mot. to Dismiss, ECF No. 37-1 ("Def.'s Mem.");
- Pl.'s Nov. 20, 2017 Letter, ECF No. 39;
- Def.'s Reply in Support of Second Mot. to Dismiss, ECF No. 41 ("Def.'s Reply").

In an exercise of its discretion, the Court finds that holding oral argument in this action would not be of assistance in rendering a decision. *See* LCvR 7(f).

*United States*, 193 F.3d 545, 548 (D.C. Cir. 1999)); *Fillmore v. AT & T Mobility Servs. LLC*, 140 F. Supp. 3d 1, 2 (D.D.C. 2015) ("the Court, as it must in a case brought by a *pro se* plaintiff, considers the facts as alleged in both the Complaint and Plaintiff's Opposition to Defendant's Motion to Dismiss.").

As the Court noted in its November 15, 2016 Memorandum Opinion, Plaintiff's allegations are not a model of clarity. Nonetheless, the Court can discern the following: Plaintiff was hired by Defendant as a security officer in 2012. *See* Pl.'s Opp'n to Mot. to Dismiss, ECF No. 15, at 4. Before being employed by Defendant, Plaintiff worked for a company called U.S. Security Associates Inc. *Id*. While working for U.S. Security, Plaintiff complained to his superiors, including a Major Jenkins, that assignments were not being made on the basis of employees' seniority. *Id.* at 4. Plaintiff also complained about his superiors' refusal to allow Plaintiff to see the company's "seniority list," which Plaintiff alleges must be given to a new contractor within ten days when a contract changes hands. *Id*. at 4-5. Plaintiff alleges that his superiors retaliated against him for making these complaints. *Id*.

After being hired by Defendant in 2012, Plaintiff was stationed at Johnson Middle School in Washington D.C. *Id*. at 4. Plaintiff alleges that Major Jenkins was responsible for this placement, and that she placed Plaintiff there in retaliation for Plaintiff's previous complaints while at U.S. Security. *Id*. at 5. Plaintiff alleges that this placement was wrongful because his seniority demanded that he be given a better assignment. *Id*.

In 2013, Plaintiff was fired for allowing an unauthorized individual to enter the school. *Id*. at 4. Plaintiff alleges that his termination was wrongful because the individual was a parent of one of the students at the school and therefore authorized to enter. *Id*. Plaintiff alleges that Defendant lied on a disciplinary form that states that Plaintiff allowed an unauthorized person on

to school premises. *Id*. at 4, 6. Plaintiff also takes issue with the fact that the disciplinary form was unsigned. *Id*. at 6.

Plaintiff suggests that these actions violated a number of policies or documents. Primarily, Plaintiff refers to a "disciplinary policy" or "progressive disciplinary policy" and a "Dos and Don'ts" list prepared by a company hired by Defendant to handle employment issues. *Id*. at 3, 6.

Plaintiff has indicated that he filed a grievance against AlliedBarton with his union, the Service Employees International Union ("SEIU"), based on the above allegations, but that the SEIU refused to arbitrate his claims because it determined that they lacked merit. *See* Pl.'s Suppl. Brief, ECF No. 22, at 1. Plaintiff appealed this decision, but his appeal was denied. *Id.* at 2. Plaintiff apparently then filed a charge with the National Labor Relations Board ("NLRB"), challenging the SEIU's refusal to arbitrate against AlliedBarton. Plaintiff has attached to one of his pleadings a letter from the NLRB denying Plaintiff's appeal from a Regional Director's refusal to issue a complaint asserting that the SEIU failed to fairly represent him in the processing of his grievance. *Id.* at 8.

**B. Dismissal, Remand and Subsequent Pleadings**

On June 30, 2016, Defendant moved to dismiss this case on the grounds that Plaintiff's claim, which was styled as one for breach of contract under District of Columbia law, was completely preempted by Section 301 of the LMRA. *See* Def.'s Mot. to Dismiss, ECF No. 6. On November 15, 2016, the Court issued a Memorandum Opinion and Order granting Defendant's motion and dismissing this case. *See* Nov. 15, 2016 Mem. Op. and Order, ECF Nos. 23, 24. The Court found that Plaintiff's state law claims were preempted by Section 301 because they were not meaningfully independent of the Collective Bargaining Agreement

("CBA") that was in place between the SEIU and AlliedBarton during Plaintiff's employment. *See Berry v. Coastal Int'l Sec., Inc.*, 968 F. Supp. 2d 104, 110 (D.D.C. 2013) ("section 301 completely preempts any action predicated on state law if that action is either: (1) founded upon rights created by a collective bargaining agreement; or (2) substantially dependent upon analysis of that agreement.").

On August 2, 2017, the D.C. Circuit affirmed-in-part this Court's Order dismissing this case, in that it held that the Court correctly concluded that Plaintiff's state law claims were preempted by the LMRA because they depended on the meaning of the CBA. *See Washington v. AlliedBarton Sec. Servs., LLC*, No. 16-7147, 2017 WL 4180147 (D.C. Cir. Aug. 2, 2017). Accordingly, the court held that "appellant's claims must be brought, if at all, under Section 301." *Id.* The D.C. Circuit ordered that this case be remanded to determine whether Plaintiff's pleadings could be viewed as stating a claim under that statute. *Id.* Because Plaintiff's Complaint asserted a state law cause of action for breach of contract, and Plaintiff had not previously asserted a claim under Section 301, the Court gave Plaintiff the opportunity to file a pleading setting forth whether, and if so how, he contended that the facts of his case stated a claim under Section 301. *See* Sept. 18, 2017 Order, ECF No. 35.

Plaintiff subsequently filed a Notice with the Court which, liberally construed, alleges that Defendant violated Section 301. *See* "The Order of the Court," ECF No. 36. The pleading does not contain any new material factual allegations beyond those in Plaintiff's pre-remand pleadings.

Defendant then moved to dismiss this case again, on the grounds that Plaintiff cannot state a claim under Section 301 because any such claim would be untimely under the applicable statute of limitations. That motion has been fully briefed and is now ripe for resolution.

## II. LEGAL STANDARD

Under Rule 12(b)(6), a party may move to dismiss a complaint on the grounds that it "fail[s] to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6).[2] "[A] complaint [does not] suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 557 (2007)). Rather, a complaint must contain sufficient factual allegations that, if accepted as true, "state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.

## III. DISCUSSION

The key to resolving Defendant's Second Motion to Dismiss is determining which statute of limitations applies to Plaintiff's Section 301 claim. In making this determination, the Court is guided by the D.C. Circuit's opinion in *Cephas v. MVM, Inc.*, 520 F.3d 480 (D.C. Cir. 2008). In *Cephas*, like in this case, plaintiff sued his former employer, claiming that he had been terminated in violation of the employer's CBA with the employee's union. *Id.* at 482. In its defense, the employer argued that plaintiff's termination was "not reviewable" under the CBA because plaintiff had been terminated at the written request of the government, and the CBA expressly stated that its grievance procedure did not apply under such circumstances. *Id.* at 483,

---

[2] Although at the outset of the Second Motion to Dismiss Defendant states that its motion is being brought pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6), the Court understands from the remainder of that motion that it is actually a Rule 12(b)(6) motion to dismiss for failure to state a claim. *See* Def.'s Mem. at 1 ("Plaintiff's complaint, considering all of his filings, fails to state a claim"); *id.* at 9 ("Defendant respectfully requests that this Court dismiss Plaintiff's complaint in its entirety for failure to state a claim").

489. The district court held that plaintiff's state law claims were preempted by Section 301, and that the applicable statute of limitations for any potential Section 301 claim was the six month period provided for by § 10(b) of the National Labor Relations Act, 29 U.S.C. § 160(b) ("NLRA"). *Id.* at 482. Because plaintiff had filed his suit after this six month period had expired, the district court dismissed his case. *Id.*

The D.C. Circuit reversed. It agreed with the district court that plaintiff's state law claims were preempted by Section 301, but disagreed about the statute of limitations that should apply if plaintiff were to proceed under that section. *Id.* at 483. The court explained that "[a]lthough [plaintiff's] only cause of action arises under a federal statute, that is, § 301, federal law does not necessarily displace the statute of limitations that would apply under D.C. law." *Id.* at 484. "Section 301 does not specify a statute of limitations, and 'the general rule [is] that statutes of limitation' for federal rights of action that do not specify a limitation period 'are to be borrowed from state law.'" *Id.* (quoting *Reed v. United Transp. Union,* 488 U.S. 319, 324 (1989)). The D.C. Circuit noted that that it "presumptively appl[ies] the limitation period that would apply to the state law claim that is 'most closely analogous' to the federal claim in suit." *Id.* (quoting *North Star Steel Co. v. Thomas,* 515 U.S. 29, 34 (1995)). "The presumption favoring state law is overcome only 'when the state limitations period . . . would frustrate or interfere with the implementation of national policies or be at odds with the purpose or operation of federal substantive law.'" *Id.* (quoting *North Star Steel,* 515 U.S. at 34-35). "In that event, the courts must borrow a limitation period from an analogous federal statute." *Id.* at 485.

Applying this framework, the *Cephas* court determined that the statute of limitations applicable to a Section 301 claim varies depending on the context. *Id.* at 488. The presumption favoring the application of a state law limitations period (in this case, a three year period for

7

breach of contract claims), is overcome if the Section 301 claim presented by the plaintiff is a "hybrid § 301/fair representation claim." *Id.* at 485. In such a "hybrid" claim, the plaintiff is not merely claiming that his employer breached a CBA, but is also complaining that the plaintiff's union breached its duty of fair representation by acting in a "discriminatory, dishonest, arbitrary or perfunctory fashion." *Id.* If a plaintiff's claim is "hybrid" in this manner, the appropriate limitations period is the six month period set forth in § 10(b) of the NLRA. *Id.*; *see also Robinson v. Washington Metro. Area Transit Auth.*, 167 F. Supp. 3d 118, 127 (D.D.C. 2016) ("a hybrid breach-of-CBA/breach-of-duty of fair representation claim is subject to the shorter, six-month statute of limitations applicable to claims arising under the LMRA"). If a plaintiff's claims *only* assert that his or her employer breached the CBA, and do not also contain a claim about union misconduct, the state law statute of limitations for breach of contracts is presumptively applicable. *Cephas,* 520 F.3d at 489-90. The D.C. Circuit concluded that the particular claim raised in *Cephas* was not a hybrid one. In that particular case, plaintiff's grievance could not have been processed through the CBA's grievance procedures due to a carve-out from that procedure for terminations requested by the government. Because the union could not have represented plaintiff by pressing his claim through the CBA's grievance procedure, the D.C. Circuit reasoned that plaintiff's lawsuit logically could not be alleging that the union breached its duty of fair representation. *Id.* at 489 ("Because Cephas's claim could not have been processed through the grievance procedure in the CBA, it follows his case does not depend upon his union having breached its DFR"). The lawsuit must have been aimed only at plaintiff's employer.

Applying the logic of *Cephas* to this case, the Court concludes that—to the extent Plaintiff could be said to have asserted a Section 301 claim at all—that claim would be a "hybrid

8

§ 301/fair representation claim." As an initial matter, unlike in *Cephas*, there is no indication in this case that Plaintiff's grievance would have been exempt from the grievance procedure established in the CBA.³ As the Court noted in its November 15, 2016 Memorandum Opinion, the CBA appears to cover all of the rights and obligations apparently at issue in this lawsuit. *Washington v. AlliedBarton Sec. Servs., LLC*, 217 F. Supp. 3d 208, 212 (D.D.C. 2016). And, with exceptions not relevant here, the "Grievance/Arbitration" section of the CBA states that "*[a]ll disputes or differences involving the interpretation or application of this Agreement* that arise between the Union and the Employer shall be resolved as provided in this Article." *Id.* § 24.1 (emphasis added). The procedure includes written submissions, meetings between the union and the employer and, if necessary, binding arbitration. *Id.* § 24. It explicitly covers grievances which, like Plaintiff's, relate to an employee's discharge. *Id.* § 24.1(A). The Court can see no exception or carve-out from this procedure that would apply to Plaintiff's grievance. In fact, Plaintiff himself sought to vindicate the rights at issue in this lawsuit initially by using the grievance procedure, and the SEIU only declined to arbitrate because it did not see merit in Plaintiff's grievance (not because the grievance procedure was inapplicable for any reason). *See* Pl's Supplemental Brief, ECF No. 22. In short, a grievance procedure existed in this case through which Plaintiff's union could have arbitrated Plaintiff's claims against Defendant. Accordingly, unlike the plaintiff in *Cephas*, Plaintiff in this case could be alleging that his union

---

³ Defendant provided the Court with the CBA between AlliedBarton and the SEIU that was in place during the time Plaintiff was employed by Defendant. *See* Decl. of Timothy Price, ECF No. 6-2, Ex. A. The Court considers the CBA even though Plaintiff did not attach it to his pleadings because it is discussed in, and important to, a number of those pleadings. "Incorporation by reference can . . . amplify pleadings where the document is not attached by the plaintiff, but is 'referred to in the complaint and [ ] integral to [the plaintiff's] claim.'" *Banneker Ventures, LLC v. Graham,* 798 F.3d 1119, 1133 (D.C. Cir. 2015) (quoting *Kaempe v. Myers,* 367 F.3d 958, 965 (D.C. Cir. 2004)).

did not fairly or adequately represent him. *See Lever v. Entergy Nuclear Operations Inc.*, No. 15-CV-3327(KAM), 2016 WL 1627619, at *5 (E.D.N.Y. Apr. 22, 2016) (distinguishing *Cephas* and determining that plaintiff's claim was a hybrid one because "unlike in *Cephas*, the CBA in question specifically provides for grievance and arbitration of the conduct that plaintiff complains of here, the discharge of an employee. The presence of a grievance procedure and an arbitration clause here implicates a duty of fair representation by the Union.").

Having carefully reviewed the entire record in this case, the Court determines that such allegations are in fact part of Plaintiff's lawsuit. As discussed above, Plaintiff has filed a pleading in which he indicates that he took steps to initiate the CBA's grievance procedure with his union, the SEIU, but that the SEIU declined to take his claim to arbitration against AlliedBarton because they determined that it lacked merit. Plaintiff unsuccessfully appealed that decision, and then filed an unsuccessful charge against the SEIU with the NLRB. *See Cephas*, 520 F.3d at 488 (discussing cases that "involved a claim as to which the union filed but later abandoned a grievance" where plaintiff "challenged the result of the grievance procedure," and noting that these cases "likely presented or should have presented a hybrid claim for breaches of both the CBA and the DFR.").

In addition to this procedural history, Plaintiff has made affirmative allegations in this case that he is not satisfied with the SEIU's representation. He states that "[t]he purpose of a union is to inform its members on what's going on, represent them in grievances and in courts and to settle disputes." Pl.'s Suppl. Br., ECF No. 22, at 2. However, Plaintiff alleges, "I have never received any information regarding what had been done for its members and I can only recall one meeting between 2012 and 2013 and it was cancelled." *Id.* The Court infers from these allegations that part of Plaintiff's Complaint in this case is that his union did not adequately

represent him. When given an opportunity to rebut Defendant's assertion that Plaintiff's Complaint incorporates such allegations, Plaintiff failed to do so. *See generally* Pl.'s Nov. 20, 2017 Letter. In fact, in his latest pleading, instead of rebutting this interpretation of his Complaint, Plaintiff reinforced the Court's conclusion that his claim is a hybrid one by including an underlined paragraph describing the different theories under which "[s]uits against union[s] could be brought." *Id.* at 2. Plaintiff has not named the SEIU as a Defendant in this case, but that does not mean that his claim is not a hybrid one. As the D.C. Circuit has explained, "[t]he employee may bring his action against the employer, the union, or both, 'but the case he must prove is the same.'" *Cephas*, 520 F.3d at 485 (quoting *DelCostello v. Int'l Bhd. of Teamsters*, 462 U.S. 151, 165 (1983)); *see also Lever*, 2016 WL 1627619, at *5 ("that plaintiff did not bring suit against the Union does not make his claims pure § 301 claims."). Considering the record as a whole, the Court concludes that Plaintiff's case is best described as a "hybrid § 301/fair representation claim." Accordingly, the statute of limitations in this case is borrowed from Section 10(b) of the NLRA, and is six months.

Applying this limitations period, the Court concludes that Plaintiff's Complaint is untimely and must be dismissed. The six month statutory period for hybrid claims "'begin[s] to run from the later of (1) when the employee discovers, or in the reasonable exercise of diligence should have discovered, the acts constituting the alleged [breach] by the employer, or (2) when the employee knows or should have known of the last action taken by the union which constituted the alleged breach of its duty of fair representation.'" *See Mercer v. Inter-Con Sec. Sys., Inc.*, 82 F. Supp. 3d 250, 254 (D.D.C. 2015) (quoting *Montgomery v. Omnisec Int'l Sec. Servs., Inc.*, 961 F. Supp. 2d 178, 184 (D.D.C. 2013)).

The allegedly wrongful act by Plaintiff's employer in this case—his termination—occurred in 2013. The very latest date in any way associated with Plaintiff's unsuccessful efforts to have the SEIU press his claims against his employer was June 6, 2014, when he received notification from the NLRB that his appeal of that body's decision not to issue a complaint against his union had been denied. *See* Pl.'s Suppl. Brief at 8. Plaintiff did not file his Complaint until June 2, 2016, *see* Compl., ECF No. 1-2, far more than 6 months later than these dates. Accordingly that Complaint cannot state a timely Section 301 claim.

Before concluding, the Court briefly addresses several miscellaneous issues. First, to the extent Plaintiff claims that the D.C. public school system violated any laws or committed any torts, *see* Pl.'s "The Order of the Court" at 1 ("The tortious interference between AlliedBarton and the plaintiff by DC public school was breach of the contract"), those assertions are misplaced because the D.C. public school system is not a party to this lawsuit. Second, Plaintiff states in one of his pleadings that "[t]his is an example of Tort law – Negligent Infliction of Emotional Distress." *Id.* To the extent Plaintiff intended to assert a negligent infliction of emotional distress claim in this case, that effort fails. The tort of negligent infliction of emotional distress applies to particular circumstances—*e.g.*, where a plaintiff is put in danger of physical injury or where there exists a special relationship between the plaintiff and defendant that implicates plaintiff's emotional well-being—that are simply not present in Plaintiff's pleadings, no matter how liberally construed. *See Lesesne v. D.C.*, 146 F. Supp. 3d 190, 195 (D.D.C. 2015) (discussing elements of a negligent infliction of emotional distress claim and the theories under which such a claim may be brought). Finally, in his latest pleading Plaintiff has made reference to the D.C. False Claims Act. *See* Pl.'s Nov. 20, 2017 Letter at 5. Plaintiff has not complied

with any of the requirements to bring a civil action as a *qui tam* plaintiff under this Act. *See* D.C. Code § 2-381.03. For this reason at least, there is no False Claims Act claim in this case.

## IV. CONCLUSION

In sum, the Court finds that Plaintiff cannot pursue a Section 301 claim because his Complaint was filed outside of the applicable statute of limitations. The Court also finds that Plaintiff has not adequately alleged any other causes of action in this case. Accordingly, the Court GRANTS Defendant's Second Motion to Dismiss and DISMISSES Plaintiff's Complaint. An appropriate Order accompanies this Memorandum Opinion.

Dated: February 5, 2018

/s/
COLLEEN KOLLAR-KOTELLY
United States District Judge